**ENVIREX, INC., Plaintiff,**

v.

**ECOLOGICAL RECOVERY ASSOCIATES, INC., et al., Defendants.**

Civ. No. 77–172.

United States District Court, M. D. Pennsylvania.

July 20, 1978.

As Corrected Oct. 13, 1978.

Leonard E. Price, Pittsburgh, Pa., for plaintiff.

Frank J. Kernan, Plowman & Spiegel, Pittsburgh, Pa., for defendants.

## OPINION

MUIR, District Judge.

Envirex, Inc. (Envirex) filed this action against Ecological Recovery Associates, Inc. (ERA) and Maryland Casualty Company, a bonding company, seeking payment for materials which it had delivered to ERA in connection with the construction of a sewage treatment plant in Lock Haven, Pennsylvania. ERA filed a counterclaim for damages based upon Envirex's alleged failure to deliver the goods in a timely fashion and failure of the goods to meet the contract specifications. The case was tried to a jury from March 17, 1978 through March 30, 1978. The jury returned answers to two sets of special verdict questions propounded to it under F.R.Civ.P. 49(a), one relating to liability and the other relating to damages, and on April 12, 1978, the Court directed the entry of judgment on the special verdict in favor of Envirex in the amount of $92,-087.75. A copy of those questions answered by the jury is attached as an appendix to this opinion. Because of the jury's answers

to those questions, other numbered questions were not considered by the jury and are not reproduced here. On April 21, 1978, ERA and Maryland Casualty filed motions for judgment notwithstanding the special verdicts, to amend or alter the judgment, and for a new trial. Supporting briefs were filed on May 30, 1978. Envirex filed a brief in opposition to all of the motions on June 9, 1978. As of the date of this Order, no reply briefs have been filed.

ERA asserts the following 20 grounds in support of its motion for a new trial:

(1) That the Court erred in admitting page 18 of the Sales Contract between Envirex and ERA into evidence,

(2) That the jury's answers to special verdict questions 2, 3 and 25 are inconsistent,

(3) That the jury's answers to special verdict questions 2, 3, 29 and 25 are inconsistent,

(4) That the Court erred in ruling that ERA was bound by the conditions found on page 18 of the Sales Contract,

(5) That the Court erred in prohibiting proof of delay damages,

(6) That the Court erred in ruling that the conditions on page 18 of the Sales Contract prevented recovery for delay damages,

(7) That the Court erred in ruling that the conditions on page 18 of the Sales Contract prevented recovery for repairs not authorized by Envirex in writing,

(8) That the Court erred in refusing to instruct the jury in accordance with the Act of April 6, 1953, P.L. 3, § 2–719, reenacted October 2, 1959, P.L. 1023, § 2, 12A Pa.Stat. Ann. § 2–719(2) (hereinafter the Uniform Commercial Code, or UCC),

(9) That the Court erred in refusing to instruct the jury that Envirex could not benefit from provisions of the contract which it breached,

(10) That the Court erred in refusing to instruct the jury regarding an implied waiver of contractual provisions from the silence of Envirex,

(11) That the Court erred in instructing the jury that the burden of proof respecting the issue of waiver was on ERA by clear, precise, and unequivocal evidence,

(12) That the Court erred in its corrective instruction relating to that burden,

(13) That the Court's corrective instruction left the jurors in doubt as to the law respecting the burden of proof,

(14) That the Court erred in refusing to submit a special verdict question to the jury asking whether it was inequitable for Envirex to rely on the conditions on page 18 of the Sales Contract,

(15) That the Court erred in submitting the case to the jury by way of special verdict questions,

(16) That the submission of the case by way of special verdict questions denied ERA due process of law,

(17) That the submission of the case on special verdict questions was basic and fundamental error,

(18) That the special verdict questions do not encompass all issues of fact,

(19) That the submission of the case by way of special verdict questions rendered the jury's findings speculative, and

(20) That the Court erred in failing to credit ERA with the sum contained in the jury's answer to the special verdict question 48.

ERA has not briefed all of the grounds set forth in its motion for a new trial and the Court will not deal with grounds not briefed, namely those relating to the Court's treatment of the burden of proof on the issue of waiver. In its motion for judgment notwithstanding the special verdict, ERA and Maryland Casualty assert that because Envirex willfully refused to complete its performance under the contract, the Court erred in entering judgment in favor of Envirex in any amount and that the Court erred in not crediting ERA with the amount of $3,618.68 which was the jury's answer to special verdict question 48. The Court will deal with these three motions and the contentions contained therein *seriatim*.

■ ERA first contends that the Court erred in admitting page 18 of the Contract entered into between Envirex and ERA into evidence. At the trial, it was ERA's contention that it was not bound by the conditions on page 18 because that page was not attached to the contract when it was sent from Envirex to ERA for approval. Mr. Schibelka, an officer of Envirex, testified at the trial that as part of its routine business practice, Envirex would have sent a complete proposal, including page 18 to all general contractors with which it contracted. ERA, citing Pennsylvania case law, contends that custom or usage of an organization is not admissible to establish a fact in its favor but may be received as corroborative of facts already proved.

The question of whether evidence is admissible in a proceeding in federal court is decided by reference to the Federal Rules of Evidence. Rule 406 states that evidence of the routine practice of an organization, whether corroborated or not, is relevant to prove that the conduct of the organization in a particular occasion was in conformity with the routine practice. Therefore, the Court did not err in admitting page 18 into evidence.

■ ERA also contends that the Court's ruling that ERA was bound by the conditions on page 18 was erroneous because even assuming that ERA received page 18 of the contract, Envirex did not prove that ERA intended to be bound by the conditions contained therein. ERA contended at trial, however, not that it did not intend to agree to the conditions on page 18 but that page 18 was never received by it. The copy of the agreement between the parties introduced by ERA did not contain page 18. Special verdict question No. 1 submitted to the jury read as follows: "Was page 18 attached to the Envirex proposal of August 22, 1973 when the proposal was sent to Ecological Recovery Associates?" The jury responded in the affirmative. ERA's counsel did not suggest to the Court at that time that an "important issue of fact," namely whether ERA intended to be bound by the conditions on page 18 assuming that it received that page along with the remainder of Envirex's proposal, had not been sent to the jury. F.R.Civ.P. 49(a) states that if in submitting special verdict questions to a jury the Court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issues so omitted unless before the jury retires he demands that submission to the jury. No demand was made in this case. In such a situation, the rule permits the Court to make a finding on the omitted fact issue or deems the Court to have made a finding in accord with the judgment on the special verdict. The judgment on the special verdict was in favor of the Plaintiff, Envirex, so that the Court's finding in this case is deemed to have been made in accord with that judgment. Therefore, both because it is the view of the Court that the only factual issue raised by ERA at trial was whether it received page 18 of the proposal and because ERA failed to object to any purported omission of a factual question relating to whether it intended to be bound by the proposal, the Court finds that no error was committed as contended by ERA.

■ ERA's next two contentions are that the jury's answer to special verdict question No. 25 was inconsistent with its answer to special verdict questions 2, 3, and 29. For purposes of clarity, the Court will set out in full the text of each question and the jury's response: Question 2 asked: "Did Morse-McCormack [a sales representative employed by Envirex] agree with Ecological Recovery Associates on November 2, 1973 that the equipment would be shipped so as to permit compliance with the completion date set forth in Hill & Hill's engineering specifications?" The jury answered in the affirmative. Question 3 inquires "If your answer to the previous question is yes, was Morse-McCormack authorized by Envirex to make such an agreement on behalf of Envirex, or would a reasonable person have concluded based upon Morse-McCormack's actual authority and Envirex's actions that Morse-McCormack was authorized by Envi-

rex to make that agreement?" The jury also answered question 3 in the affirmative. Simply stated, questions 2 and 3 relate to whether an agency relationship existed between Envirex and its sales representative, Morse-McCormack, and whether the latter reached an agreement with ERA concerning the delivery of the equipment which Envirex promised to supply to ERA for construction of the Lock Haven Sewage Treatment Plant. The jury's answers to those two questions indicate that Morse-McCormack had either actual or apparent authority to enter into a contract on behalf of Envirex and that Morse-McCormack did agree with ERA that the equipment would be shipped so as to permit compliance with the completion dates set forth in the engineering specifications relating to the project. Question 25, which ERA asserts is inconsistent with the answers to questions 2 and 3, asks "Did Envirex deliver the equipment in the time agreed to by the parties or, if no time for delivery was agreed upon, in a reasonable time?" The jury responded that Envirex did so deliver the equipment. There is clearly no inconsistency in the jury's answers. Questions 2 and 3 indicate that the first part of the alternative formulation of question 25, namely that a time for delivery had been agreed to by the parties, was to be considered by the jury. The jury's answer to question 25 states that Envirex did deliver the equipment in the agreed-upon time. ERA contends in its brief that the finding that Envirex met the agreed schedule is directly at odds with uncontradicted testimony from both sides. However, that contention is more appropriately directed to an assertion that the jury's answer to special verdict question No. 25 is against the weight of the evidence. That ground has not been presented in ERA's motion for a new trial or briefed by ERA and the Court may not consider it. Finally, question 29, which asks the jury "If your answer to the previous question [question 28, relating to whether it was a basic assumption on which the contract was made that Envirex's drawings for equipment would be approved or disapproved by the engineer within a specified period of time]

is yes, did Hill & Hill approve or disapprove the drawings and return them to Envirex within the specified period of time from the date that Hill & Hill received the drawings?" which was answered affirmatively by the jury is in no way inconsistent with the answer to question 25. The four questions, taken together, indicate that a schedule of delivery was agreed upon by the parties, that the engineer acted in accordance with that schedule, and that Envirex delivered the equipment on time. There is no inconsistency in that sequence of events. Therefore, ERA's contention that the special verdict is inconsistent is without merit.

■ ERA makes several contentions relating to the Court's decision not to permit ERA to introduce proof of damages caused by any delay of Envirex in delivering equipment to the Lock Haven site. The Court precluded ERA from introducing evidence of any damage caused by Envirex's failure to deliver the equipment on time because the jury found in response to special verdict question 25 that Envirex delivered the equipment within the time agreed to by the parties. In the face of such a finding, it would have been inconsistent to permit the jury to assess any damages for delay in delivery. The Court did not rely on ¶ 7 of page 18 of the contract, which contains a limitation of liability for consequential damages, because that paragraph clearly relates to consequential damages, including loss occasioned by delay, resulting from a breach of warranty and not a failure to deliver equipment within the time set forth in the contract. ERA contends that the reliance on the answer to question 25 is misplaced because of that question's inconsistency with other answers to special verdict questions by the jury. This contention has already been dismissed by the Court and does not form the basis for a holding that the Court erred in prohibiting the introduction of delay damages.

ERA's next contention is that the Court erred in refusing to instruct the jury concerning the rule of law contained in UCC § 2–719(2). Section 2–719(1) permits contracting parties to provide for remedies in

addition to or in substitution for those provided in the Code and states that where resort to a remedy provided in the contract is expressly agreed to be exclusive, that remedy is the sole remedy that may be had by a complaining party. § 2–719(2) limits that rule, however, by stating that where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in the Code. In order to determine whether the Court should have instructed the jury in accordance with § 2–719(2) it is necessary to set forth briefly the scope of the limited remedy agreed to by the parties and the circumstances surrounding its operation in this case.

Paragraph 7 of the conditions of sale contained on page 18 of the August 22, 1973 proposal which became a part of the contract between Envirex and ERA states that Rexnord (the parent company of Envirex) warrants that products delivered will be of good merchantable quality, free from defects in material and workmanship, and will possess the characteristics represented in writing by Rexnord. Rexnord agreed that upon satisfactory proof of a claim relating to breach of warranty, necessary repairs, additions, or corrections would be made within a reasonable time or defective parts would be replaced free of charge at the option of Rexnord. In larger type, ¶ 7 states that "the foregoing is in lieu of all other warranties, express or implied, including any warranties that extend beyond the description of the product." Finally, the paragraph provides that the warranty sets forth the extent of liability of Rexnord for breach of warranty and that Rexnord would not be liable for consequential damages of any nature including loss of profit, delay, or expense from breach of warranty.

In response to special verdict questions 20 and 22, the jury found that the goods supplied to ERA by Envirex were fit for ERA's particular purposes and were able to pass without objection in a sewage disposal equipment supplier's trade under the contract description. Therefore, Envirex breached neither the warranty of merchantability nor the warranty of fitness for a particular purpose contained in UCC §§ 2–314 & 2–315. However, in response to questions 16, 17, and 18 the jury found that Envirex made a promise with respect to the goods or supplied a description of the goods which became a part of the basis of the bargain, that the goods did not conform to that promise or description and that ERA notified Envirex within a reasonable time of the non-conformity. Therefore, the jury found the breach of an express warranty as provided in UCC § 2–313. This is also a breach of the warranty contained in ¶ 7 that the goods will possess the characteristics represented in writing by Rexnord. Consequently, absent a limitation on remedies, ERA would have been entitled to damages for breach of warranty, see UCC § 2–714 and, if appropriate, consequential and incidental damages, see UCC § 2–715. The Court determined following the liability phase of this case that as a matter of law the limitation of remedy in ¶ 7 was exclusive and that circumstances did not cause it to fail of its essential purpose so that ERA was limited to any charges for correcting defects or making additions which were authorized by Envirex in writing unless ERA could prove a waiver or modification of that condition in ¶ 7. ERA contends that the Court erred in failing to ask the jury whether circumstances caused the limited remedy in this case to fail of its essential purpose.

The remedy provided in ¶ 7 is essentially in two parts. First, Envirex agreed to make repairs or, at its option, replace defective parts free of charge within a reasonable time after satisfactory proof of claim provided that any charges for correcting defects or making additions were authorized by Envirex in writing. Second, the limitation excludes any liability for consequential damages resulting from breach of warranty. § 2–719(3) states that consequential damages may be excluded unless the exclusion is unconscionable. In this case, the contract is between parties of equal bargaining ability who had contracted with each other and with other similar parties in the past. There is no suggestion that the

limitation on recovery of consequential damages was unconscionable in this case and the Court does not construe ERA's motion for a new trial as so contending. Therefore, the Court's discussion is limited to the question of whether the jury should have been asked to determine whether the limitation on ERA's remedies for breach of warranty, namely that in such a case Envirex would repair or replace the defective parts and allow charges for such repairs if authorized in writing by Envirex, failed of its essential purpose under the circumstances of this case.

Comment 1 to § 2–719 states that it is the essence of a sales contract that at least minimum adequate remedies be available. Consequently, if an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of his bargain, the party is entitled to use the general remedy provisions of the Code.

It is the view of the Court that because of the basic premise of the Uniform Commercial Code that commercial parties of roughly equal bargaining power are free to shape their agreement in any way they desire, a provision which has been agreed upon should be set aside only in the unusual, not the usual, case. Here ERA does not contend that Envirex engaged in any coercive, fraudulent, overreaching, or unconscionable sales tactics. Consequently, it appears that the limitation of liability clause was fair and reasonable at the time of contracting. The circumstances which allegedly would permit an inference that the clause failed of its essential purpose are either Envirex's alleged failure to authorize the necessary repairs to be made or ERA's failure to make timely demand for such repairs. ERA asserts that the most practicable thing in this case was for the contractor to perform repairs upon the equipment himself. However, the limited remedy clause clearly contemplates the performance of repairs by a party other than Envirex. The contract states only that Envirex shall not be liable for such repairs which it has not authorized in writing. Therefore, reduced to its essentials, ERA's claim is

that a reasonable person could have concluded that the limited remedy in this case failed of its essential purpose because Envirex failed to authorize in writing the repairs which were done by ERA at the job site. However, the Court is convinced that the jury should not have been permitted to draw such an inference in this case.

First, the word "circumstances" in § 2–719(2) would seem to refer to circumstances not within the contemplation of the parties at the time of contracting and circumstances not within the control of the complaining party. For example, if the Court adopted the construction of the word "circumstances" urged upon it by ERA, it could be contended that because ERA had failed to notify Envirex that it was performing repairs in the field, thereby precluding Envirex from authorizing the making of such repairs in writing, that is a circumstance which would cause the limited remedy to fail of its essential purpose. However, the essential purpose of the remedy was to provide ERA with equipment which would do the job while allowing Envirex a reasonable period of time to make its goods conform to the contract and limiting its liability for unforeseen consequences. *Cf. Beal v. General Motors Corp.,* 354 F.Supp. 423 (D.Del. 1973). Even assuming all of the circumstances of this case, the remedy would have performed that purpose unless either ERA failed to notify Envirex that on-site repairs were being made or if Envirex wrongfully refused to authorize such repairs. If the former occurred, ERA may not complain of the remedy's failure because it was caused by an action under its control. Ordinarily, the circumstances which might cause a limited remedy to fail of its essential purpose are of two kinds: actions which a seller promises to perform but fails to do so within a reasonable time, see *Beal v. General Motors Corp.,* 354 F.Supp. 423 (D.Del.1973); *Seely v. White Motor Co.,* 63 Cal.2d 9, 403 P.2d 145 (1965), or specific factual circumstances relating to the items sold and the buyer's purposes. Thus, a seller's agreement to refund the purchase price is insufficient when the goods sold such as tomato

seeds, cannot be determined to be of the wrong variety until after planting and sprouting has occurred, at which time it is too late to plant a new crop. *See Dessert Seed Co. v. Drew Farmers Supply, Inc.*, 248 Ark. 858, 454 S.W.2d 307 (1970); *see also Wilson Trading Corp. v. David Ferguson, Ltd.*, 23 N.Y.2d 398, 297 N.Y.S.2d 108, 244 N.E.2d 685 (1968). The buyer's failure to act so as to permit the seller to act in accordance with his agreement may not be asserted by the buyer as a circumstance causing the remedy to fail.

If ERA contends that the remedy failed of its essential purpose because Envirex wrongfully refused to authorize or perform repairs within a reasonable time, no prejudice resulted from the Court's failure to ask the jury if the remedy failed of its essential purpose. Special verdict question No. 51 asked the jury if Envirex wrongfully refused to authorize ERA to make repairs on any items of equipment which did not conform to the contract description. The jury answered that question in the negative. It is the view of the Court that there were no "circumstances" in this case which caused the remedy to fail of its essential purpose, and that it was not error to fail to instruct the jury concerning the rule of law contained in § 2–719(2).

ERA next contends that the Court should have instructed the jury that a seller may not take advantage of limitations in its warranty if it finds that the seller breached its obligations under the warranty. This contention simply restates part of ERA's objection to the Court's failure to instruct in accordance with § 2–719(2) and is adequately disposed of by the Court's inquiry to the jury contained in special verdict question No. 51. Envirex's obligation under the warranty was to act in good faith in authorizing ERA to make repairs on defective items of equipment provided that satisfactory proof of a defect was communicated to Envirex. The Court did instruct the jury that Envirex was under a general duty of good faith and that the jury could find that this duty was breached if Envirex wrongfully refused to authorize repairs to be

made. The jury found, however, in response to question 51 that Envirex did not wrongfully refuse to authorize any repairs. Therefore, in accordance with the jury finding, Envirex did not breach its obligations under the warranty. No further instruction or questioning on that point was necessary.

ERA contends that the Court erred in refusing to instruct the jury that it could imply a waiver of the provisions of the warranty from the silence of Envirex if Envirex knew that ERA was undertaking repairs in the field. It is the view of the Court that as a general matter of law, the waiver of a contractual right cannot be implied from a party's silence other than in exceptional cases and that Envirex's silence in this case was perfectly consistent with enforcing its rights under the warranty clause. In order fully to understand the nature of ERA's contention, it is necessary to review both the facts concerning Envirex's action in this case and the Court's charge to the jury on the question of waiver.

The testimony at trial revealed that on many occasions ERA performed repairs or refabrications upon equipment which was delivered to the Lock Haven job site by Envirex. ERA's testimony showed that many pieces of equipment were delivered in a form which made them unsuitable for incorporation into the sewage treatment plant and that ERA decided that on-site repairs were necessary because of the delay involved in returning the equipment to Envirex for repair or refabrication. ERA also produced testimony indicating that the need for such repairs and the fact that repairs were undertaken was occasionally communicated from Mr. Milner, ERA's job superintendent, to representatives of Envirex. ERA contends that under those circumstances, Envirex waived enforcement of the provision in ¶ 7 on page 18 of the August 22, 1973 proposal that Envirex would be liable only for those repairs which it made itself or authorized to be made in writing. The Court instructed the jury that it could find waiver or estoppel or oral modification

of the contract only if it found that Envirex performed some act or made some representation indicating its willingness to waive reliance on the contractual provision. The jury did find, in response to special verdict question 44, that Envirex orally authorized ERA to make repairs to equipment valued at $1,385.50. Envirex conceded at trial that it was liable for repairs made to defective torque tube brackets and a sludge withdrawal tube in the amount of $710.00. The jury also found that Envirex and ERA did not agree that written authorization by Envirex for repairs to defective goods would not be required (answer to question 38), that Envirex did not waive compliance with that provision (question 39), and that Envirex did not represent to ERA that written authorization for repairs would not be required (question 40). ERA contends that in addition to the Court's instructions relating to question 39, whether Envirex waived compliance with the provisions, the Court should have told the jurors that they could imply a waiver from Envirex's silence in the face of its knowledge that repairs were being made.

The Court instructed the jury that it could find that Envirex waived compliance with the provision only if it intentionally abandoned a known legal right. This instruction is in accordance with settled Pennsylvania law. See B. Laub, *Pennsylvania Trial Guide*, § 456 (1959). The Supreme Court of Pennsylvania has stated that to make proof of a waiver of a legal right there must be clear, unequivocal, and decisive action of the party having such right showing a purpose to surrender such right on his part. *Cole v. Philadelphia Company*, 345 Pa. 315, 323, 26 A.2d 925 (1942). The Court's ruling in denying an ERA's request to charge the jury that it could infer a waiver from Envirex's silence in this case is founded on two propositions. First, in the circumstances of this case silence could not legally constitute a waiver because the facts of the case do not permit an exception to be made to the general rule that silence is not a waiver of a legal right. The cases cited by ERA are factually distinguishable from what occurred in the instant case. In

*Universal Builders, Inc. v. Moon Motor Lodges*, 430 Pa. 550, 244 A.2d 10 (1968), the Court did hold that in certain circumstances if a party to a contract stood by and permitted extras to be incorporated into a project while being aware that the work was done without proper authorization an implied promise to pay for the work was created. The contract in that case provided that all change orders for construction agreed to between Universal and Moon should be in writing and signed by Moon. The Court said that whether a waiver occurred in that situation was governed by the principles contained in Restatement of Contracts § 224 and that a waiver would be implied in that case because Moon's work agent requested the changes and orally promised to pay for them in addition to being on the site and seeing the work in progress. The Court stated that the enforcement of the provision requiring written authorization from Moon would approach fraudulent conduct on the part of the party attempting to rely on the contractual condition and that waiver would be implied. In this case, however, there is no indication that Envirex orally authorized ERA to make *any* repairs on equipment over and above the amount found by the jury, or approximately $600.00 in excess of the amount which ERA was permitted to recover. Certainly, there was no oral authorization of most of the repair work done by ERA at the Lock Haven job site. Therefore, the case is distinguishable from *Universal Builders* because Envirex's agents did not request that the changes be made nor did they promise to pay for them. Additionally, the changes were made for the benefit of ERA. In *Pennsylvania v. Transamerica Insurance Co.*, 462 Pa. 268, 341 A.2d 74 (1975), the Court implied a waiver of a condition in an insurance contract that any legal action on the contract be brought within 3 years of the claim because the insurance company itself induced the failure to file suit in a timely fashion and that having done so it could not take advantage of the Plaintiff's failure. Again, in *Transamerica Insurance*, there was affirmative action on the part of one of

the contracting parties from which the waiver was implied and enforcement of the contractual limitation would amount to nothing more than fraud.

 The facts of this case are substantially different. Here, it is not clear that Envirex knew of the nature or extent of the repairs undertaken by ERA at the job site. Even assuming that it was aware of the repairs, however, it was perfectly reasonable for Envirex to remain silent under the circumstances. ERA had an obligation under the contract to file a satisfactory proof of claim with Envirex and was aware of the fact that Envirex was not liable for any repairs unless they were authorized in writing. ERA had agreed to such a limitation of remedy. Envirex was under no duty in those circumstances to warn ERA that it would enforce the contractual provisions if ERA failed to make satisfactory proof of the claim or obtain written authorization for repairs in writing from Envirex before undertaking repairs and its reliance on ¶ 7 does not amount to fraud. Therefore, the conduct of Envirex could not constitute waiver as a matter of law. Secondly, the jury was not permitted and should not have been permitted to infer waiver from Envirex's conduct because Envirex's silence could be construed not as a waiver but as an intention to rely on the contract and not pay for the repairs because no proof had been made and no authorization in writing had been obtained by ERA. Unlike the situation in *Universal Builders*, the repairs were not made for the benefit of Envirex but rather undertaken for ERA's own purposes in incorporating the equipment into the sewage treatment plant. Had Envirex stood by and permitted ERA to confer a benefit upon Envirex and then subsequently refused to pay for the benefit, a waiver might properly have been implied under the circumstances. However, because Envirex's silence is equally consistent with an intention to enforce its contractual rights assuming that at some later time ERA made a claim for damages based upon the repairs which it undertook without written authorization, it would have been improper for the Court to instruct the jury

that it could infer a waiver from Envirex's silence. The inference of intent to rely upon the contractual provision in good faith is an equally reasonable one. Therefore, no error was committed.

ERA next contends that the Court erred in not submitting a special verdict question to the jury asking whether it was inequitable for Envirex to rely on the written contentions in ¶ 7. It is the view of the Court that such a question would ask the jury to render a conclusion of law and that all of the underlying facts concerning whether Envirex was permitted to invoke the limitation of remedy clause were covered by other special verdict questions. The Court asked the jury if Envirex waived compliance with the provisions, if it made a representation that written authorization for repairs would not be required, if the parties agreed that written authorization would not be required, and if Envirex wrongfully refused to authorize repairs under the contract. Therefore, ERA was not harmed by the Court's failure to submit its requested question.

The final contentions in ERA's motion for a new trial relate to the Court's decision to submit the case to the jury by way of special verdict questions. ERA contends that it was denied due process because of the influence that the special verdict questions had on the nature and focus of the jury's deliberations and because in a case as complex as this one, the Court abused its discretion in submitting special verdicts to the jury.

 It is clear that the Court has wide discretion in determining whether to submit a case to a jury by way of special verdict questions under F.R.Civ.P. 49(a) and in determining their form so long as the questions are adequate to obtain a jury determination of the facts essential to the judgment. *See R. H. Baker & Co. v. Smith-Blair, Inc.*, 331 F.2d 506, 508 (9th Cir. 1964). Generally, special verdicts are to be preferred in complicated cases because special verdict questions localize the specific problems raised by the evidence and focus the

jury's attention on specific issues of fact, thus giving direction to their deliberations and freeing them to concentrate on the facts of the case in an orderly fashion rather than having to deal with a mass of undifferentiated facts as well as a charge on the complexities of the laws. *See Jamison Co. v. Westvaco Corp.*, 526 F.2d 922 (5th Cir. 1976). The Court in that case noted that the additional effort spent in formulating special verdict questions is miniscule when compared to the cost of a retrial and that by focusing the jury's attention on fact issues and isolating the possibility of error, costly retrials or full retrials would be avoided in most cases. The Court took these factors into account in this case. It is the view of the Court that without special verdict questions, the jury would have had no means of structuring its deliberations in order to determine the essential facts of the case and, because the case was so complex, there would have been a substantial risk that a jury verdict in favor of either party would have been based in large part upon speculation and conjecture. The jury did an exceptional job in this case in returning reasoned answers to the Court's questions and the Court concludes that absolutely no harm resulted to either party from the submission of the case to the jury by way of special verdicts. Rather, the Court is convinced that each party got a much fairer trial through the use of special verdict questions than it would have otherwise.

ERA and Maryland Casualty have also moved for judgment notwithstanding the special verdict and to amend or alter the judgment. In support of the former motion, the Defendants contend that because the jury found that Envirex willfully refused to complete the check-out and start-up services provided for under the contract (answers to special verdict questions 33–36) Envirex could not have been permitted to recover any sum of money in accordance with the contractual provisions.

 The contract in this case consisted of two parts, a contract for the sale of goods and a contract for the provision of certain services relating to those goods.

The full contract price was $290,000. In response to special verdict question 46, the jury found that of that $290,000 sales price, $5,472.00 was fairly allocable to services with the balance, or $284,528.00, allocable to the sale of sewage treatment equipment from Envirex to ERA. All of the equipment was delivered, but Envirex did not perform check-out and start-up services of the equipment. The sale of goods portion of the contract is clearly governed by the terms of the Uniform Commercial Code. The "substantial performance" rule of general common law, see *Sgarlat v. Griffith*, 349 Pa. 42, 36 A.2d 330 (1944) is incorporated into the UCC in § 2–601 by giving a buyer the option of rejecting an entire shipment of goods if they fail to conform in any respect to the contract. In other words, even a technical breach of the contract justifies the buyer's rejection of the goods, so that perfection in performance on the part of the seller is required. However, the Code makes it equally clear that if a buyer, rather than rejecting goods, accepts them and thereafter fails to revoke his acceptance in accordance with the provisions of the code, he becomes obligated to pay the purchase price of the goods but may thereafter recover his damages as provided in the code for whatever breach of contract occurred. *See* UCC §§ 2–606 & 2–607. Therefore, the Court determined in accordance with § 2–607(1) which states that "[t]he buyer must pay at the contract rate for any goods accepted," that because ERA accepted all of the goods delivered to it by Envirex, it became subject to an obligation to pay the contract price for the goods. Because the Code, rather than the common law, controls at least this portion of the contract, ERA may not now invoke the "substantial performance" rule in support of its contention that it is not obligated to pay for any of the goods accepted. Clearly, the Code does not contemplate that a buyer may accept non-conforming goods which may have substantial value but refuse to pay anything at all for them. The remaining portion of the contract, which involves services, was not completed by Envirex and ERA received a credit for the amount of

the contract price fairly allocable to those services. Therefore, ERA did not pay for services which it did not receive and it was treated fairly by the Court's determination of damages.

█ ERA's final contention, that made in support of its motion to amend or alter the judgment, is that the Court should amend the judgment by deducting the sum of $3,618.68 from the amount the Court determined should be paid to Envirex. That sum, according to ERA, represents the "back charge" assessed by the Lock Haven City Authority against ERA because of Envirex's refusal to perform the check-out and start-up services under the contract. As this Court's order in the above-captioned case dated April 12, 1978 indicates, however, ERA is not entitled to a credit in the amount of the "back charges." ERA was damaged by Envirex's failure to complete the services contracted for only if ERA was forced to spend more on those services than it would have paid under the contract. If Envirex's breach permitted ERA to have the services performed for a lesser sum of money, then although there was a breach, ERA was not damaged because it was not required to pay the contract price for the services. In this case, the jury's answers to the special verdict questions indicated that what ERA spent for the services, the amount of the "back charge" was less than the portion of the contract price fairly allocable to the services. Therefore, ERA was not damaged by the breach and the Court will not alter the judgment to reflect a credit for the amount of the "back charge."

An appropriate order will be entered denying the post-trial motions of Ecological Recovery Associates and Maryland Casualty Company.

## APPENDIX

1. Was page 18 attached to the Envirex proposal of August 22, 1973 when the proposal was sent to Ecological Recovery Associates?

Answer: Yes _X_
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) Go to the next question.

2. Did Morse-McCormack agree with Ecological Recovery Associates on November 2, 1973 that the equipment would be shipped so as to permit compliance with the completion date set forth in Hill & Hill's engineering specifications?

Answer: Yes _X_
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) If your answer to this question is yes, go to the next question.

(c) If your answer to this question is no, go to question 4.

3. If your answer to the previous question is yes, was Morse-McCormack authorized by Envirex to make such an agreement on behalf of Envirex, or would a reasonable person have concluded based upon Morse-McCormack's actual authority and Envirex's actions that Morse-McCormack was authorized by Envirex to make that agreement?

Answer: Yes _X_
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) Go to the next question.

4. Did Envirex and Ecological Recovery Associates agree independent of any agreement made through Morse-McCormack that Envirex was to deliver the equipment listed in their proposal of August 22, 1973 in accordance with the scheduled completion time contained in Hill & Hill's engineering report?

Answer: Yes ___
No _X_
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) Go to the next question.

5. Did Envirex promise to deliver the equipment in the units set forth on page two of the letter of November 16, 1973?

Answer: Yes __X__
No ___

(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) Go to the next question.

6. Did Ecological Recovery Associates promise to pay money to Envirex prior to Envirex's delivery of all the equipment and provision of services which were specified in the contract?

Answer: Yes __X__
No ___

(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) If your answer to this question is yes, go to the next question.

(c) If your answer to this question is no, go to question 14.

7. If your answer to the previous question is yes, did Envirex and Ecological Recovery Associates agree that progress payments were to be made on the basis of the approximate dollar values of the PFT equipment and on the basis of price per pound for the balance of the material shipped to the Lock Haven job site?

Answer: Yes ___
No __X__

(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) If your answer to this question is yes, go to question 10.

(c) If your answer to this question is no, go to the next question.

8. Was billing on a per pound basis for the equipment supplied by Envirex a method of dealing so regularly observed in the sewage treatment equipment suppliers' trade as to justify an expectation between a reasonable buyer and a reasonable seller in that industry that it would be used in billing Ecological Recovery Associates?

Answer: Yes ___
No __X__

(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) If your answer to this question is yes, go to question 10.

(c) If your answer to this question is no, go to the next question.

9. If your answer to the previous question is no, did Ecological Recovery Associates promise to pay installments to Envirex in accordance with the prices per units of equipment set forth on page two of the letter of November 16, 1973?

Answer: Yes __X__
No ___

(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) Go to the next question.

10. Did Envirex deliver goods to Ecological Recovery Associates which were accepted by Ecological Recovery Associates before the credit hold was imposed by Envirex?

Answer: Yes __X__
No ___

(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) If your answer to this question is yes, go to the next question.

(c) If your answer to this question is no, go to question 14.

11. Was Ecological Recovery Associates obligated to pay any money to Envirex before a credit hold was imposed by Envirex?

Answer: Yes __X__
No ___

(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) If your answer to this question is yes, go to the next question.

(c) If your answer to this question is no, go to question 14.

12. If your answer to the previous question is yes, was any of that amount past due when the credit hold was imposed by Envirex?

Answer: Yes _X_
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) If your answer to this question is yes, go to the next question.

(c) If your answer to this question is no, go to question 14.

13. If your answer to the previous question is yes, was the value of the entire contract between Envirex and Ecological Recovery Associates substantially impaired by Ecological Recovery Associates' failure to pay Envirex for goods accepted and for which payment was past due at the time of the credit hold?

Answer: Yes _X_
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) Go to the next question.

14. Has Envirex delivered, and has Ecological Recovery Associates accepted, all the equipment which Envirex promised to deliver?

Answer: Yes _X_
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) If your answer to this question is yes, go to question 16.

(c) If your answer to this question is no, go to the next question.

16. Did Envirex make any promise with respect to the goods or supply a description of the goods to be delivered which became a part of the basis of the bargain between the parties?

Answer: Yes _X_
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) If the answer to this question is yes, go to the next question.

(c) If the answer to this question is no, go to question 19.

17. If your answer to the previous question is yes, did the goods which were delivered conform to Envirex's promise or description?

Answer: Yes ___
No _X_
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) If your answer to this question is yes, go to question 19.

(c) If your answer to this question is no, go to the next question.

18. If your answer to the previous question is no, did Ecological Recovery Associates notify Envirex within a reasonable time after it learned or should have learned that the equipment did not conform with Envirex's promise or description that it did not so conform?

Answer: Yes _X_
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) Go to the next question.

19. Did Envirex know at the time the contract was entered into that the goods to be supplied to Ecological Recovery Associates would be used for a particular purpose and that Ecological Recovery Associates was relying on Envirex's skill and judgment to supply appropriate goods?

Answer: Yes X
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) If your answer to this question is yes, go to the next question.

(c) If your answer to this question is no, go to question 22.

20. If your answer to the previous question is yes, were the goods which Envirex supplied fit for the purpose for which Ecological Recovery Associates desired them?

Answer: Yes X
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) If your answer to this question is yes, go to question 22.

(c) If your answer to this question is no, go to the next question.

22. Were the goods delivered by Envirex of fair average quality, fit for the ordinary purpose for which such goods are used, or able to pass without objection in the sewage disposal equipment suppliers' trade under the contract description?

Answer: Yes X
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) If your answer to this question is yes, go to question 24.

(c) If your answer to this question is no, go to the next question.

24. If you answered yes to question 18, 21, or 23, was the defect in the equipment present when Envirex made the equipment available at its plant for shipment to Lock Haven?

Answer: Yes X
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) Go to the next question.

25. Did Envirex deliver the equipment in the time agreed to by the parties or, if no time for delivery was agreed upon, in a reasonable time?

Answer: Yes X
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) If your answer to this question is yes, go to question 28.

(c) If your answer to this question is no, go to the next question.

28. Was it a basic assumption on which the contract was made that Envirex's drawings would be approved or disapproved by Hill & Hill Engineers and returned to Envirex within a specified period of time from the date that Hill & Hill received the drawings?

Answer: Yes X
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) If your answer to this question is yes, go to the next question.

(c) If your answer to this question is no, go to question 33.

29. If your answer to the previous question is yes, did Hill & Hill approve or disapprove the drawings and return them to Envirex within the specified period of time from the date that Hill & Hill received the drawings?

Answer: Yes X
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) If your answer to this question is yes, go to question 33.

(c) If your answer to this question is no, go to the next question.

33. Did Envirex complete the check-out services, if any, required under its contract with the Defendant?

Answer: Yes ___
No _X_
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) If your answer to this question is yes or your answer to question 6 is no, go to question 35.

(c) If your answer to this question is no, and your answer to question 6 is yes, go to the next question.

34. If your answer to the previous question is no, and your answer to question 6 is yes, was Plaintiff excused from rendering such services by reason of non-payment by Defendant?

Answer: Yes ___
No _X_
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) Go to the next question.

35. Did Envirex complete the start up services, if any, required under its contract with the Defendant?

Answer: Yes ___
No _X_
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) If your answer to this question is yes or your answer to question 6 is no, return to court.

(c) If your answer to this question is no and your answer to question 6 is yes, go to the next question.

36. If your answer to the previous question is no and your answer to question 6 is yes, was Plaintiff excused from rendering such services by reason of non-payment by Defendant?

Answer: Yes ___
No _X_
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) Return to Court.

37. What amount of money did Ecological Recovery Associates pay to Envirex for the goods which it accepted?

$202,648.95

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) Go to the next question.

38. Did Envirex and Ecological Recovery Associates agree that written authorization by Envirex for repairs to defective goods would not be required?

Answer: Yes ___
No _X_
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) Go to the next question.

39. Did Envirex waive compliance with the provision in the contract requiring written authorization for repairs to defective goods?

Answer: Yes ___
No _X_
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) Go to the next question.

40. Did Envirex represent to Ecological Recovery Associates that written authorization for repairs to defective goods would not be required?

Answer: Yes ___
No _X_
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) If your answer to this question is yes, go to the next question.

(c) If your answer to this question is no, go to question 42.

42. What was the value of the repairs to the defective torque tube brackets and sludge withdrawal tube?

$710.00

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) Go to the next question.

43. How much interest is due as of today on the dollar figure, if it exceeds $0, which is in your answer to the previous question, measured at 6% per annum?

$134.90

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) Go to the next question.

44. What was the value of the repairs, including the repairs to the defective torque tube brackets and sludge withdrawal tube, which Envirex either orally or in writing authorized Ecological Recovery Associates to make or to have made as a result of defects in the equipment delivered?

$1,385.50

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) If the dollar figure in your answer to this question exceeds $0, go to the next question.

(c) If the dollar figure in your answer to this question does not exceed $0, go to question 46.

45. How much interest is due as of today on the dollar figure, if it exceeds $0, which is in your answer to the previous question, measured at 6% per annum?

$242.68

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) Go to the next question.

47. Did Ecological Recovery Associates perform or cause a third party to perform the start-up and check-out services which Envirex failed to perform?

Answer: Yes X
No ___
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) If your answer to this question is yes, go to the next question.

(c) If your answer to this question is no, go to question 50.

48. If your answer to the previous question is yes, what amount of money did Ecological Recovery Associates pay to another party and expend itself in performing those services?

$3,618.68

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) If the dollar figure in your answer to this question exceeds the dollar figure in your answer to question 46, go to the next question.

(c) If the dollar figure in your answer to question 46 exceeds the dollar figure to your answer to this question, go to question 50.

50. The amount of money which Envirex is entitled to receive is $290,000 less the sum of the dollar figures in your answers to questions 37 and 46. How much interest is due as of today on the amount of money which Envirex is entitled to recover, measured at 6% per annum?

$11,053.60

INSTRUCTIONS:

(a) The burden of proof is on Envirex.

(b) Go to the next question.

51. Did Envirex wrongfully refuse to authorize Ecological Recovery Associates to make repairs on any items of equipment which did not conform to the contract description?

Answer: Yes ___
No X
(Check one)

INSTRUCTIONS:

(a) The burden of proof is on Ecological Recovery Associates.

(b) If your answer to this question is yes, go to the next question.

(c) If your answer to this question is no, return to Court.