**James MAYNARD, Appellant,**

v.

**Richard SAYLES; Oren J. McCart; Ronald L. Calegari; John M. Bartlett; Steven Christensen; Mark W. Walker; Barry L. Harris; Peter A. Edlund, Appellees.**

**No. 86–1784.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1987.

Decided April 23, 1987.

Rehearing En Banc Granted July 17, 1987.

David Peterson, Kansas City, Mo., for appellant.

Bill Randall Williams, Kansas City, Mo., for appellees.

Before HEANEY, Circuit Judge, BRIGHT, Senior Circuit Judge, and ARNOLD, Circuit Judge.

BRIGHT, Senior Circuit Judge.

James E. Maynard appeals from a judgment dismissing his civil rights action against six Kansas City, Missouri, police officers following a jury trial. Maynard charged officers Richard Sayles, Steven Christensen, John Bartlett, Mark Walker, Ronald Calegari, and Oren McCart with having physically abused him when arresting him for rape. Maynard raises evidentiary questions as a basis for reversal. Upon review, we reverse and remand for a new trial.

## I. BACKGROUND

In essence, Maynard's theory at trial was that he did not resist arrest and thus the physical beating he received was unjustified. He claimed to have been disarmed and lying face down in bed asleep when the defendant police officers entered the room to arrest him. He claimed to have next remembered waking up to blows being delivered to his head and body. In trying to raise his arms, he claimed to have found his hands handcuffed behind his back. Other than his own account of the arrest, Maynard relied on evidence of deep scalp lacerations and proof of other injuries to support his civil rights claim.

The defendant police officers admit to beating Maynard, but claim their blows were necessary to prevent Maynard's escape. Maynard offered the police officers' version of the arrest in his case-in-chief by reading portions of the officers' pre-trial depositions. As elaborated upon during

the defendants' case, the officers present when Maynard was awakened testified that upon being roused, Maynard rushed to the bedroom doorway. The officers claimed to have then subdued Maynard with blows in the hallway. To explain the lacerations on Maynard's head, several officers testified that Maynard hit his head against a door-jamb in the course of the struggle.

The officers' testimony raised a question of credibility: the believability of their version of the incident—that Maynard attempted to resist arrest. To discredit this story, Maynard attempted to introduce the testimony of Cynthia Stein, a former Kansas City police officer, that there exists an unwritten rule of corroboration or "code of silence" among Kansas City police officers. During an offer of proof, Stein testified that where a fellow officer has used excessive force in arresting a criminal suspect, the witnessing officers will not discuss the incident except to corroborate the fellow officer's version of the arrest. In her testimony, Stein stated that such a rule exists, and gave an account of a specific instance in which she claimed to have violated the rule and to have suffered formal and informal discipline for the transgression.

The trial court excluded Stein's proposed testimony in its entirety.

## II. DISCUSSION

■ Rule 406 of the Federal Rules of Evidence states,

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Fed.R.Evid. 406. The foundation for Rule 406 evidence can be established by a lay opinion. 23 C. Wright & K. Graham, *Federal Practice and Procedure* § 5276

(1980). Such an opinion need only comply with Rule 701 of the Federal Rules of Evidence which requires that the witness's testimony be rationally based on perception and helpful to a determination of a fact at issue. *Burlington Northern Ry. Co. v. Neb.*, 802 F.2d 994, 1004 (8th Cir.1986); *Greenwood Ranches, Inc. v. Skie Constr. Co.*, 629 F.2d 518, 522 (8th Cir.1980). Personal knowledge based on industry experience is a sufficient foundation for lay opinion testimony. *See, e.g., Farner v. Paccar, Inc.*, 562 F.2d 518, 520 (8th Cir.1977).

■ By her employment experience with the Kansas City Police Department, Stein established that she possessed the personal knowledge necessary to testify to a routine practice at the Kansas City Police Department. Stein worked as a police officer in the Kansas City Police Department for three years; from March 1979 to December 1982. During this time, she worked side by side with three of the defendants—Officers Calegari, Bartlett, and Sayles. Thus Stein possessed firsthand knowledge of departmental practices and the degree to which they had been followed by police officers, including the defendants in this case.

We believe Stein's theory exhibited a sufficient foundation to be admitted as Rule 406 evidence of a routine practice, despite Maynard's failure to produce more than one witness to testify to what Stein referred to as a "code of silence." Realistically, the nature of the routine practice at issue is one to which few police officers would testify. Thus, it is unlikely that additional evidence of this sort of routine practice would be available.[1]

We do not believe failure to produce more than one witness to testify to the alleged "code of silence" prohibits admitting Stein's testimony under Rule 406. First, Rule 406 explicitly states that evidence of a routine practice need not be corroborated to be admissible.[2] Second,

---

**1.** Referring to a lawsuit filed by Stein against the Kansas City Police Department, appellees' counsel at oral argument attacked Stein's testimony as that given by a former police officer with an ax to grind. However, officers with complaints against the department may be the

only officers to testify to an unwritten "code of silence" such as is present in this case.

**2.** Significantly, Congress omitted subdivision (b) of the proposed Rule 406 which had prescribed that proof of a habit or routine could be

courts frequently determine that the testimony of one or two witnesses is sufficient to establish a foundation for Rule 406 evidence. *See, e.g., United States v. Oddo,* 314 F.2d 115 (2d Cir.), *cert. denied,* 375 U.S. 833, 84 S.Ct. 50, 11 L.Ed.2d 63 (1963) (one official's testimony sufficient to establish foundation for his evidence of a routine recordkeeping practice at INS); *Swine Flu Immunization Products Liability Litigation,* 533 F.Supp. 567 (D.Colo.1980) (two health department employees' testimony sufficient to establish foundation for their evidence that department routinely obtained consent forms before administering flu shots); *Envirex, Inc. v. Ecological Recovery Assoc., Inc.,* 454 F.Supp. 1329 (M.D. Penn.1978), *aff'd,* 601 F.2d 574 (1979) (one employee's testimony sufficient to establish foundation for his evidence that company routinely sends complete proposal to all general contractors). *See also Wetherill v. University of Chicago,* 570 F.Supp. 1124, 1129 (N.D.Ill.1983); 23 C. Wright & K. Graham, *Federal Practice and Procedure* § 5276 (1980).

In this case, Stein's background in the Kansas City Police Department afforded an adequate basis under Rule 406 for her to testify to the routine police practice of corroborating a fellow officer's version of an arrest when some physical force has been exercised toward the person arrested. Her testimony may be considered either as evidence of the existence of a fact that there was such an unwritten rule or as her lay opinion that such an unwritten rule existed. The evidence served only to cast doubt upon the credibility of the police officers' story. Stein's testimony could not prove that the Kansas City officers followed a routine practice of using excessive force when arresting criminal suspects, and it does not disclose sufficient foundation to be admitted for that purpose.

As Maynard's case rested in part upon discrediting the officers' story, the district court's refusal to admit Stein's opinion testimony must be deemed reversible error. *See Robbins v. Whelan,* 653 F.2d 47, 52 (1st Cir.), *cert. denied,* 454 U.S. 1123, 102 S.Ct. 972, 71 L.Ed.2d 110 (1981); *Burlington Northern Ry. Co.,* 802 F.2d at 1005. The admissibility of Rule 406 evidence is, however, controlled by the overriding provisions of Rule 403 for exclusion on grounds of prejudice, confusion, misleading the jury, or waste of time. *See* 2 *Weinstein's Evidence* 406–4 (1986). Accordingly, the district court did not err in refusing to admit that portion of Stein's testimony in which she testified to a specific incident where she experienced the "code of silence." The account was highly prejudicial to one of the defendant police officers, and raised a matter collateral to the issues on trial.

Maynard also challenges the admission into evidence of certain statements contained in his Jail Medical Unit Record. These statements, which Maynard objected to at trial, were recorded by the clinic supervisor at the Jackson County Jail Medical Unit. We hold these statements to be inadmissible as not reasonably pertinent to diagnosis or treatment under Rule 803(4) of the Federal Rules of Evidence. *Raycraft v. Duluth, Missabe and Iron Range Ry. Co.,* 472 F.2d 27 (8th Cir.1973); *Woolridge v. Secretary of Health & Human Services,* 637 F.Supp. 741 (S.D.W.Va.1986). On retrial, the statements should be excluded. The inadmissible portion of the August 17, 1984 entry in Maynard's Record reads as follows,

> His [Maynard's] complaint of the beating has led him to bring suit against the KCPD [Kansas City Police Department]. During this interview he constantly alluded to the case and how airtight it is. He used this to subtly threaten me.
>
> * * * * * *

---

"in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine." J. Weinstein & M. Berger, 2 *Weinstein's Evidence* 406–1 (1986). In approving the deletion, the House Committee on the Judiciary specifically left open the suffi-

ciency of the examples to be decided in each case, stating, "The Committee deleted this subdivision believing that the method of proof of habit and routine practice should be left to the courts to deal with on a case-by-case basis." *Id.* (quoting H.R.Rep. No. 650, 93d Cong., 1st Sess. 5 (1973).

During the interview, it should be noted that this patient had an inappropriate smile when discussing his suit and his pain.

\*    \*    \*    \*    \*    \*

2. Malingering
3. Litigious

\*    \*    \*    \*    \*    \*

Exhibit 57. The statements that the beating led Maynard to bring suit against the police department, that Maynard used this to threaten the interviewer, and that Maynard was "malingering" and "litigious," are speculations unrelated to Maynard's treatment or diagnosis. Furthermore, there is no evidence that Maynard's medical complaints were unfounded and thus that he was "malingering." Finally, these statements represent the clinic supervisor's unsubstantiated conclusions, as no foundation was laid showing that the supervisor possessed expertise in identifying malingering or litigious propensities of injured patients.

### III. CONCLUSION

Accordingly, we reverse and remand this case for a new trial with the questioned evidence, if offered, to be admitted or excluded in accordance with this opinion.